**FILED**
**Mar 02, 2026**
**10:20 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Milen Dimitrov | Docket No. 2022-03-1217 |
| v. | State File No. 69194-2022 |
| Bechtel National, Inc., et al. | |
| Appeal from the Court of Workers'<br>Compensation Claims<br>Pamela B. Johnson, Judge | |

---

### Affirmed and Remanded

---

In this interlocutory appeal, the employer asserts the trial court erred in denying its motion for summary judgment. The employee reported falling while walking down a concrete step at a jobsite, resulting in left elbow and wrist fractures. Thereafter, the employee alleged that he suffered from various other injuries and medical conditions that arose from the work accident. In its motion for summary judgment, the employer acknowledged the compensability of the employee's left wrist and elbow injuries but asserted that the employee has not come forward with any evidence that any other medical diagnoses arose primarily from the work accident. It supported its dispositive motion with a statement of undisputed material facts and two physicians' written reports and/or causation opinions. The trial court determined that the employer failed to meet its burden of production and denied its dispositive motion, and the employer has appealed. Having carefully reviewed the record, we affirm the trial court's order and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

Joshua A. Wolfe and Trent M. Norris, Knoxville, Tennessee, for the employer-appellant, Bechtel National, Inc.

Milen Dimitrov, employee-appellee, pro se

### Factual and Procedural Background

Milen Dimitrov ("Employee"), worked as an electrical field engineer for Bechtel National, Inc. ("Employer"). On September 9, 2022, Employee was sent to a warehouse

to complete an inventory investigation. While entering the warehouse, Employee tripped and fell while walking down a concrete step. According to Employee, he reached out with his left arm while falling and fell onto his left side. He reported striking his left elbow, torso, left hip, left shoulder, and head.[1] Employee later denied any loss of consciousness. An ambulance was called to the scene, and paramedics placed a temporary cast on Employee's left wrist. He was then transported to a local hospital's emergency department.

The emergency physician, Dr. Clinton Palmer, noted swelling in the left forearm, which had been splinted on site, and a small abrasion near the left eye. Employee denied any chest pain or shortness of breath and did not report any nausea, vomiting, or abdominal pain. His complaints included pain in his left wrist, left elbow, and left shoulder. Dr. Palmer ordered multiple diagnostic scans, including x-rays of the left elbow, left forearm, left shoulder, and left wrist, as well as CT scans of the head and cervical spine. The shoulder x-rays indicated "[m]oderate chronic degenerative changes" but no "acute fracture or subluxation." The left forearm x-rays revealed a "heavily comminuted slightly displaced fracture" of the distal radius and a second "nondisplaced fracture" of the ulnar styloid." These findings were confirmed by the wrist x-rays. The left elbow x-rays revealed "[n]o subluxation" and "[n]o elbow effusion."[2] The CT of the head revealed no hemorrhage or "other acute intracranial process," and the CT of the cervical spine showed "multilevel disc space narrowing" and other degenerative findings but no evidence of acute fracture or dislocation.

Employee reported to a different local emergency room two days later complaining of pain from a chest wall contusion he alleged to have sustained in the fall. He also described left neck pain, left shoulder pain, and left arm pain. A CT of the chest revealed a left upper lobe mass, a suspected left adrenal mass, and mediastinal adenopathy, which were suspicious for metastatic lung cancer. Employee was referred to a pulmonologist for further evaluation.

On September 20, Employee underwent a PET scan, apparently as part of his pulmonary work-up. There was evidence of a "mixed cystic and solid nodule" in the anterior left upper lobe, "consistent with a primary lung cancer." No lytic or bone lesions were noted in the cervical spine, but the scan revealed several left rib fractures.

Employer provided several panels of physicians, from which Employee selected Dr. Benjamin Rogozinski, Dr. Charles Loehr, Dr. John Reynolds, and Dr. Paul Johnson. Employee first saw Dr. Rogozinski on September 14 for treatment of his left elbow and wrist fractures. During his physical examination, Dr. Rogozinski noted "ecchymosis and edema" throughout his left upper extremity. Dr. Rogozinski also noted signs of muscle

---

[1] Medical records indicate Employee was wearing a hard hat at the time of the fall.

[2] The shoulder and elbow x-rays were described as "suboptimal" due to "patient positioning."

2

strain in the triceps of the left arm apparently due to "cast/strapping complications." Dr. Rogozinski diagnosed a "triceps avulsion fracture" in addition to the distal radius fracture, and he recommended surgical repair of both the triceps avulsion fracture and the distal radius fracture, which he performed on September 21, 2022.

Employee was evaluated by Dr. Loehr on October 4 for complaints of neck pain. Employee reported to Dr. Loehr that he had sustained a triceps tendon injury, a left wrist fracture, three rib fractures, and a left kidney injury. He complained of "excruciating pain" in his left ribs. Dr. Loehr noted that Employee was undergoing a separate workup for possible lung cancer, which he stated is "not related to his injury." During his physical examination, Dr. Loehr noted "[d]ecreased range of motion in all planes" with complaints of pain radiating down the left arm. Dr. Loehr diagnosed multiple left rib fractures, a cervical sprain, and "[t]raumatic arthropathy" in the left shoulder.

In November 2022, Employee sought treatment on his own with Dr. Edwin Spencer for complaints of pain in his shoulder, neck, and low back. By the time of that evaluation, Employee had been diagnosed with "non-small cell lung cancer" in the left lower lobe and was anticipating surgical resection in January. Dr. Spencer noted limited range of motion in the cervical spine and certain positive findings in the left shoulder. He diagnosed a possible rotator cuff tear and possible cervical radiculopathy. He recommended that Employee seek treatment with a physiatrist "for management of cervical spine and lumbar spine."

Dr. Rogozinski issued a final medical report dated January 10, 2023, in which he concluded Employee had reached maximum medical improvement on that date with respect to the left arm fractures. He assigned a permanent medical impairment rating of 2% for those injuries.

On January 12, 2023, Employee first saw Dr. John Reynolds for an authorized evaluation of his neck and shoulder complaints. Dr. Reynolds noted "full active assisted elevation of the left shoulder in all planes." An MRI did not reveal a rotator cuff tear but showed "[m]ild degenerative changes." A cervical spine MRI indicated "multilevel degenerative changes" and "mild central canal stenosis." Dr. Reynolds did not recommend any treatment for the shoulder condition but recommended "further evaluation and treatment by a spine provider."

Also on January 12, 2023, Dr. Reynolds responded to a written questionnaire from Employer's claim representative in which he agreed that the "work activities/exposure contributed 50% or LESS in causing the need for treatment to the left shoulder." (Emphasis in original.) On February 15, 2023, Employer issued a Notice of Denial ("Form C-23") with respect to the alleged shoulder injury.

On February 23, 2023, Dr. Johnson responded to a written questionnaire from Employer's claim representative in which he agreed that the "work activities/exposure contributed 50% or LESS in causing the need for treatment to his cervical spine." (Emphasis in original.) On March 2, 2023, Employer issued a Form C-23 with respect to the alleged cervical spine injury.[3]

In his June 2024 affidavit, Employee asserted that, in addition to his wrist and elbow fractures, the work-related fall caused a lumbar disc herniation, rib fractures, a left shoulder injury, spinal disc bulges, a head injury, a triceps injury, and a left kidney injury, none of which had received proper medical treatment. He also alleged that he was entitled to medical monitoring for an "[a]scending aortic aneurysm" and that he suffered a pulmonary embolism as a result of the fall. Employee requested a "settlement" for these alleged injuries.

The trial court conducted an expedited hearing in August 2024 to address Employee's request for additional medical treatment for various conditions allegedly caused by the work-related accident. Because the only medical opinions offered into evidence at that expedited hearing were those of Dr. Reynolds and Dr. Johnson, who concluded that Employee's left shoulder and cervical spine conditions, respectively, did not arise primarily from the work accident, the court determined that Employee had not met his burden of proof and denied his request for additional medical benefits. Employee sought to appeal that order but did not pay the filing fee even after a show cause order was issued, and his appeal was dismissed.

In June 2025, Employer filed what it identified as a motion for summary judgment.[4] Employer asserted in its motion that Employee had "failed to present sufficient proof that he sustained an injury to his left shoulder, neck, head, collar bone, low back, rib cage, left kidney, heart, and lungs" or that Employee produced evidence that "the employment contributed more than fifty percent (50%)" in causing any such injuries, considering all causes. In support of its motion, Employer relied on Dr. Reynolds's office note of January 12, 2023, Dr. Reynolds's responses to the insurer's January 2023 questionnaire, and Dr. Johnson's responses to the insurer's February 2023 questionnaire.

Employer also filed a statement of undisputed facts as required by Tennessee Rule of Civil Procedure 56. Employee then filed a motion in September 2025 requesting additional time to respond to Employer's motion and asking the court to continue the summary judgment hearing set for October 16. The court granted Employee's motion and reset the hearing for November 18. The court also instructed Employee to file his response by November 10. Employee then filed another motion on October 25, this time to extend

---

[3] There are no medical reports from Dr. Johnson in the record on appeal.

[4] Given that Employer has accepted the compensability of Employee's left wrist and left elbow injuries, it is more accurately described as a motion for *partial* summary judgment.

the time within which to file a Standard Form Medical Report ("Form C-32"). The Form C-32 he eventually filed, however, contained no information addressing the primary cause of the various medical conditions alleged by Employee.

In his responses to Employer's statement of undisputed facts, Employee reiterated the various injuries and medical conditions he claimed arose from the work-related fall.[5] Although Employee did not respond directly to Employer's statement summarizing Dr. Reynolds's causation opinion, he objected that he did not see Dr. Reynolds until "approximately [six] months after the injury," and that "the state of my injuries had obviously changed." He made the same objection to the causation statements of Dr. Johnson.

Following a hearing, the trial court denied Employer's motion for summary judgment. The court reasoned that the medical records and causation statements on which Employer had relied in support of its dispositive motion are not the type of evidence or documentation contemplated in Tennessee Rule of Civil Procedure 56.04. As a result, the court determined that Employer had not met its initial burden of production and, therefore, the burden never shifted to Employee to come forward with sufficient evidence of a genuine issue of material fact. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2025). The interpretation and application of statutes and regulations are questions of law that we review de novo with no presumption that the trial court's conclusions are correct. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). The grant or denial of a motion for summary judgment likewise is a question of law that we review de novo with no presumption that the trial court's conclusions are correct. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). As such, we "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2025).

---

[5] The record is unclear as to the date Employee filed his responses to Employer's statement of undisputed facts. Employee filed the Form C-32 on November 13, 2025, and his responses to Employer's statement of undisputed facts appear in the record approximately ten pages after the Form C-32, but there is no separate file stamp affixed to his responses.

## Analysis

### *Summary Judgment Standards*

The Tennessee Supreme Court has explained the requirements for a movant to prevail on a motion for summary judgment:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence *must do more than make a conclusory assertion that summary judgment is appropriate* on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.*

*Rye*, 477 S.W.3d at 264-65 (emphasis added).

Tennessee Rule of Civil Procedure 56 identifies the documents and materials that may be considered by a trial court in ruling on a motion for summary judgment:

> [T]he judgment sought shall be rendered forthwith if the *pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits*, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Tenn. R. Civ. P. 56.04 (emphasis added). Rule 56.06 provides that affidavits used to support or oppose a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Tenn. R. Civ. P. 56.06. In addition, Rule 56.06 provides that "[e]xpert opinion affidavits shall be governed by Tennessee Rule of Evidence 703." *Id.* Finally, as we have noted previously, medical records, standing alone, are not competent evidence to consider at the summary judgment stage of a case. *See Thomas v. 10 Roads Express, LLC*, No. 2021-08-0819, 2023 TN Wrk. Comp. App. Bd. LEXIS 17, at *7-8 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2023); *Lemons v. Elwood Staffing Services, Inc.*, No 2019-02-0313, 2021 TN Wrk. Comp. App. Bd. LEXIS 12, at *14 (Tenn. Workers' Comp. App. Bd. May 4, 2021) ("[W]e conclude [the employer] failed to present sufficient proof in accordance with Rule 56 to negate an

6

essential element of [the employee's] claim or to demonstrate that [the employee's] evidence is insufficient to establish [the employee's] claim as a matter of law.").

*Application of Summary Judgment Standards*

In the present case, Employer sought summary judgment on the basis that Employee's expert medical proof was insufficient to establish a causal link between the work-related accident and any alleged medical conditions other than the left wrist and elbow injuries.[6]   However, the evidence on which Employer relied did not include depositions of any medical experts, interrogatory answers, admissions addressing expert medical opinions, or affidavits expressing medical opinions as contemplated in Rule 56. Instead, Employer's statement of undisputed facts relied on medical records and the responses to medical questionnaires completed by two physicians to negate causation. The trial court determined Employer had not met its burden of production under Rule 56. We agree.

In its brief on appeal, Employer argues that Employee's response to its dispositive motion was "deficient" and that "Employee . . . cannot establish his claim via medical evidence."  However, as the Supreme Court noted in *Rye*, a threshold question when considering a motion for summary judgment is whether the moving party has met its burden of production in the first instance *before* the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact for trial.  *Rye*, 477 S.W.3d at 265. Thus, for purposes of this motion, Employee's response to Employer's motion need not be considered because Employer did not meet its initial burden of production.  Consequently, we conclude the trial court did not err in denying Employer's motion for partial summary judgment at this stage of the case.

**Conclusion**

For the foregoing reasons, we affirm the trial court's order denying summary judgment and remand the case.  Costs on appeal are taxed to Employer.

---

[6] As we noted above, because Employer's motion sought summary judgment as to some, but not all, of Employee's claims, its motion is more accurately described as seeking *partial* summary judgment.